# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**CHRISTOPHER L. SAMUELS**                                                             **PLAINTIFF**

V.                                      Case No. 4:23-cv-107 JM

**TWIN RIVERS**                                                                          **DEFENDANT**

## ORDER

Plaintiff Christopher L. Samuels, a former employee of Twin Rivers, filed his *pro se* complaint on February 10, 2023, alleging he experienced workplace race and gender discrimination, retaliation, and was wrongly fired in violation of Title VII, 42 U.S.C. § 2000 *et seq*. (Doc. 1). Defendant moved to dismiss for failure to state a claim. (Doc. 8). For the reasons stated below, Defendant's motion (Doc. 8) is granted, in part, and denied, in part.

I.   **Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id.* It is not, however, a "probability requirement." *Id.* Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Samuels's complaint is scantily pleaded. (Doc. 1 at 4). That said, Samuels attaches to his complaint his EEOC charge as well as Defendant's response to that charge, both of which can be considered for the purposes of the motion to dismiss. *Roe v. Nebraska*, 861 F. 3d 785, 788 (8th

Cir. 2017) ("In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." (citations and internal quotation marks omitted)). As Defendant points out, generally, it is impermissible to use a brief in response to a motion to dismiss to amend the allegations raised in the complaint. (Doc. 12 at 3); *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). A *pro se* litigant, however, is "held to less stringent standards," and his complaint will be liberally construed. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In fact, when evaluating whether to motion to dismiss a *pro se* plaintiff's complaint, the Eighth Circuit instructs district courts to consider both the allegations made in a complaint and the allegations in the plaintiff's response to the motion to dismiss. *See Neudecker v. Boisclair Corp.*, 351 F.3d 361, 362 (8th Cir. 2003) (per curiam); *Anthony v. Runyon*, 76 F.3d 210, 214 (8th Cir. 1996); *Pratt v. Corrs. Corp. of Am.*, 124 F. App'x 465, 466 (8th Cir. 2005) (per curiam). Here, Defendant had an opportunity to reply to Samuels' response, and did so. Given these facts, the Court therefore considers Samuel's complaint, the documents attached to his complaint, and his response to the motion to dismiss in deciding Defendant's motion.

    **II.**    **Background**

Samuels, an African American male, worked for Defendant from March 2021 until his termination on September 14, 2021. (Doc. 1 at 12). In his complaint, Samuel states that a white male was offered work and pay that Samuels was not. (Doc. 1 at 4). He also alleges that a black female's absences were forgiven while Samuel's was held responsible for his. (*Id*.). Samuels later identifies these individuals in his response to Defendant's motion to dismiss as Cami Cogshell and Ozzi Weast. (Doc. 11 at 2). The sole remedy Samuels seeks is damages. (Doc. 1 at 5).

According to the documents attached to Samuels's complaint, new hires are considered probationary employees until they have completed six months of work for Defendant. (Doc. 1 at 17). Defendant states that it fired Samuels before the completion of his probationary period due to attendance issues. (*Id*. at 17–20). Defendant has a point system for absences. (*Id*. at 17). Samuels disputes the points Defendant assigned him. (Doc. 11 at 2).

Samuels states that, between June and July, he "worked over 30 days without a day off and worked all 12-16 hr. shifts." (Doc. 11 at 2). During the same time period, Samuels says a black female coworker, Cami Cogshell, "was late and missed multiple days" but was not disciplined for her absences. (*Id*.). Relying on rumors, Samuels says he heard that two women in human resources (HR) forgave Cogshell's absences. (*Id*.). Samuels complains that Cogshell was shown favoritism and unfairly forgiven for absenteeism while he was not rewarded for his perfect attendance during the same period. (*Id.*).

On July 27, 2021, Samuels suffered a workplace injury. (Doc. 11 at 9). Samuels was off work from July 26–29th as a result of his injury. (Doc. 1 at 19). According to Samuels, he was neither offered light duty work nor paid during the time he was absent from work due to his injury. (*Id*.; Doc. 11 at 2). Samuels asserts that light duty work was available and names two employees, Chris Bailey and Ozzi Weast, who worked in his department who were given light duty work at the same time Samuels was injured. (Doc. 11 at 2). Of note, Samuels says that he and Weast were similarly situated explaining that Weast had "the same accomplishments and positions" in the company. (*Id*.). Samuels maintains that he asked Defendant for light duty work but was told there was none to offer. (*Id*.). Defendant, however, disputes that Samuel asked for light duty work and states that no light duty work was available to offer. (Doc. 1 at 19; Doc. 9 at 8–9). According to Samuels, the company did not reach out to him regarding his injury until after he contacted the

union president. (Doc. 1 at 9). Ultimately, Defendant paid Samuels for the days he missed work due to his injury. (Doc. 1 at 20).

Samuels states that he spoke with HR to let it know that he intended to make a complaint with the Equal Employment Opportunity Commission. (Doc. 1 at 12; Doc. 9-2). Samuels recounts that he explained his intent to seek the EEOC's assistance with obtaining backpay for "time missed due to workplace injury and [to] have points removed during my unscheduled absence." (Doc. 1 at 12). Samuels also told HR that he believed that he had been treated differently due to his race and gender. (*Id*.). On September 14, 2021, Samuels met with human resources and learned the company wanted to fire him due to his poor attendance. (*Id*.).

Shortly after he was fired, Samuels recounts that he was given the opportunity to be reinstated conditioned on his ending contact with the EEOC. (Doc. 1 at 12; Doc. 11 at 3). Samuels would also be required to complete a six-month probationary period and agree to receive no back pay for the time during which he was discharged. (*Id*.).

### III.   Discussion

As an initial matter, Defendant argues that Samuels's claims should be dismissed because he failed to name an essential party—the United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Worker's International Union—in the complaint. (Doc. 8). While the Court appreciates Defendant's position, whether the Union is a dispensable party to this action need not be decided because Samuels only seeks damages and does not seek the equitable relief on which Defendant's union argument hinges. Accordingly, the Court's review is limited to whether Samuels failed to state a claim.

### A.     Discrimination

To succeed on a claim for race or gender based discrimination, Samuels must sufficiently allege that: "(1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently." *Philip v. Ford Motor Co.,* 413 F.3d 766, 768 (8th Cir. 2005).

With his gender discrimination claim, Samuels alleges that Cogbill's absences were unfairly forgiven whereas his were not. In asserting this claim, he pointedly admits that he heard that her absences had been forgiven, but Samuels offers nothing more than supposition to support his position. Additionally, the Court is left to guess as to Cogbill's job title, time with company, or skill set. As a result, even a liberal reading of Samuels's complaint leaves the Court with no way of knowing whether Cogbill and Samuels were similarly situated employees. *See Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). As a result, Defendant's motion to dismiss Samuels's gender discrimination claim is granted.

In support of his race discrimination claim, Samuels argues that Weast was offered light duty work while he was not. Although Samuels does not state Weast's race, Samuels does allege in his complaint that a "white male" was offered work and pay that he was not. (Doc. 1 at 4). Samuels then points to Weast in his response to the motion to dismiss as a similarly situated person who was offered light duty work. (Doc. 11). Liberally reading Samuels's pleadings, the Court will presume, for the purposes of the motion to dismiss, that Weast is the white male referenced in the complaint. Samuels believes that he was denied light duty work because of his race, points to

similarly situated male who was given light duty work, and states that he was only paid for the time he missed due to his injury after he complained about the discrimination. Given these facts, Defendant's motion to dismiss the discrimination claim is denied.

### B. Retaliation

To prevail on a retaliation claim under Title VII, Samuels must prove (1) he engaged in protected activity; (2) he suffered a materially adverse employment action; and (3) the materially adverse action was causally connected to his protected activity. *Wright v.. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013). "Protected activity is 'an informal or formal complaint about, or other opposition to, an employer's practice or act . . . if the employee reasonably believes such an act to be in violation of the statute in question." *Petersen v. ProxyMed, Inc.*, 617 F.Supp.2d 835, 844 (D.S.D.2008) (quoting *Jeseritz v. Potter*, 282 F.3d 542, 548 (8th Cir. 2002)).

Samuels says he complained about his discrimination and was fired. (Doc. 1 at 9, 12). Defendant denies any knowledge of Samuels's complaints about discrimination. It says that Samuels failed to connect his complaints to the Union President about discrimination to that information ever having been provided to the company and then using that fact as a basis for Samuels's termination. (Doc. 1 at 21; Doc. 9 at 15). Giving Samuels the benefit of the doubt, there is a question of fact as to whether Defendant was aware of Samuel's discriminatory complaints. As a result, Defendant's motion to dismiss his retaliation claim is denied.

IT IS SO ORDERED this 29th day of August, 2023.

_____
UNITED STATES DISTRICT JUDGE